Paul Castronovo
**PAUL CASTRONOVO, LLC**
90 Washington Valley Road
Bedminster, NJ 07921
(908) 719-8888
Attorneys for Plaintiffs
Jay B. Ross and
Protocol Electronics, Inc.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAY B. ROSS and PROTOCOL ELECTRONICS, INC., | Docket No.   05-1300 (MLC-JJH) |
| | Civil Action |
| Plaintiffs, | **AMENDED COMPLAINT AND JURY DEMAND** |
| v. | |
| CELTRON INTERNATIONAL, INC., SATELLITE SECURITY SYSTEMS, INC., ALLEN HARRINGTON, AMANDA HARRINGTON, MARIUS JORDAAN, RON PIENAAR, CELTRON INTERNATIONAL, LTD., KENNETH EADE, ESQ., CORDOVANO AND HONECK, P.C., ROGELIO CASTRO, ZIRK ENGELBRECHT, and ABC CORPORATIONS 1-100, | |
| Defendants. | |

Plaintiffs, Jay B. Ross and Protocol Electronics, Inc. ("Plaintiffs"), through their attorney, Paul Castronovo, LLC, file this Complaint and Jury Demand seeking compensatory damages, punitive damages, attorneys' fees, and costs of suit from Defendants, Celtron International, Inc., Satellite Security Systems, Inc., Allen Harrington, Amanda Harrington, Marius

Jordaan, Ron Pienaar, Celtron International, Ltd., Kenneth Eade, Esq., Cordovano and Honeck, P.C., Rogelio Castro, Zirk Engelbrecht, and ABC Corporations 1-100 ("Defendants"), and allege as follows:

## FACTS

**A.   Jurisdiction and Venue**

1.   Plaintiff Jay B. Ross resides in Pennington, Hunterdon County, New Jersey and is the sole shareholder of Plaintiff Protocol Electronics, Inc.

2.   Plaintiff Protocol Electronics, Inc. is a corporation organized under the laws of New Jersey and conducts business at 287 South Main Street, Lambertville, Hunterdon County, New Jersey.

3.   All relevant parties signed in New Jersey the contract at issue.

4.   Plaintiffs performed in New Jersey all work pursuant to the contract at issue.

5.   Celtron International, Inc. is a public corporation conducting business in New Jersey and the United States.  It is organized under the laws of the State of Nevada and principally conducts business from 563 Old Pretoria Road, Midrand, South Africa.  It was incorporated on April 8, 1998.  It trades on the over-the-counter bulletin of the NASDAQ.

6.    Through a reverse triangle merger completed on January 5, 2006, Satellite Security Systems, Inc. became a wholly owned subsidiary of Celtron International, Inc.   Satellite Security Systems, Inc. is the surviving company of the merger and, as such, retains all current and/or contingent liabilities of Celtron International, Inc., including liability for all claims by Plaintiffs.

7.    At relevant times, Allen Harrington was Chairman of the Board of Directors, Chief Executive Officer, Secretary, director, and a major stockholder of Celtron International, Inc. He is a resident and citizen of South Africa.  He was previously a major stockholder of Celtron International, Ltd.

8.    At relevant times, Amanda Harrington was Chief Financial Officer and a major stockholder of Celtron International, Inc.  She is married to Allen Harrington.  She is a resident and citizen of South Africa.   She was previously a major stockholder of Celtron International, Ltd.

9.    At relevant times, Marius Jordaan was a director of Celtron International, Inc.   He is a resident and citizen of South Africa.

10. At relevant times, Ron Pienaar was a director and major shareholder of Celtron International, Inc.   He is a resident and citizen of South Africa.

11.  Celtron  International,  Ltd.  was  a  corporation organized under the laws of Ireland.  On or about June 20, 2001, Celtron  International,  Inc.'s predecessor  (Et  Voila!  European Cafes, Inc.) acquired all the assets of Celtron International, Ltd. which included a majority interest in Orbtech Holdings, Ltd.

12.  At  relevant  times,  Kenneth  Eade,  Esq.  provided  an expert opinion under federal securities laws and legal services regarding Celtron International, Inc.'s registration after its purchase of Et Voila! European Cafes, Inc. in 2001 and various other securities filings.  He was also a large stockholder of Celtron  International,  Inc.   He  practices  law  at  827  State Street, Suite 26, Santa Barbara, California.

13.  At  relevant  times,  Cordovano  and  Honeck,  P.C.  was  an accounting  firm  that  served  as  the  independent  auditors  for Celtron International, Inc. and its subsidiaries.  It conducts business in Denver, Colorado.

14.  At  relevant  times,  Rogelio  Castro  was  an  accountant who served as the independent auditor for Celtron International, Inc.  and  its  subsidiaries.   He  conducts  business  in  Oxnard, California.

15.  At  relevant  times,  Zirk  Engelbrecht  was  an  agent  of Defendant  Allen  Harrington,  Defendant  Celtron  International,

4

Ltd., and/or Defendant Celtron International, Inc. as a stock promoter. He resides in Beverly Hills, California.

16. ABC Corporations 1-100 are professional services firms, including law firms and accounting firms, that provided professional services to Celtron International, Inc., its subsidiaries, and its predecessors in connection with the requirements of federal securities laws.

17. This court possesses federal question jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff alleges claims under 15 U.S.C. §§ 77k, 78j, and 78r, and 17 C.F.R. §§ 230.176 and 240.10b-5. This court retains supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

18. This court possesses diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and this matter is between citizens of different states and the subjects of foreign states.

19. Pursuant to 28 U.S.C. § 1391, venue before this court is proper because a substantial part of the events or omissions giving rise to these claims occurred in Hunterdon County, New Jersey and this court retains personal jurisdiction over numerous defendants at this time and there is no more convenient judicial district in which this action may otherwise be brought.

**B.    The Contract Between Protocol Electronics and Celtron International, Ltd.**

20.  Plaintiff Protocol Electronics, Inc., through Plaintiff Jay B. Ross, and Allen Harrington, "for and on behalf of Celtron International...or a name to be approved by the register of Companies," executed a contract dated May 23, 1995 (the "Contract").

21.  The "Celtron International" identified in the Contract later incorporated in Ireland as Defendant Celtron International, Ltd.

22.  The Contract bound Plaintiff Protocol Electronics, Inc. to develop a product known as "mobile credit card based cellular pay phone system" (the "Product") and to transfer all intellectual property rights in the Product to Defendant Celtron International, Ltd.

23.  In exchange for Plaintiff Protocol Electronics, Inc.'s services under the Contract, Defendant Celtron International, Ltd. agreed to: (1) pay in cash all expenses Plaintiff Protocol Electronics, Inc. incurred in developing the Product, (2) issue to Plaintiff Jay B. Ross 15% of Defendant Celtron International, Ltd. stock owned by Defendant Allen Harrington as the sole shareholder of Defendant Celtron International, Ltd. (an effective ownership interest of 15% in Defendant Celtron International, Ltd.), and (3) appoint Plaintiff Jay B. Ross to

6

the Board of Directors of Defendant Celtron International, Ltd. on registration of Defendant Celtron International, Ltd.

24.  Plaintiffs duly fulfilled all obligations under the Contract and provided the Product to Defendant Celtron International, Ltd. on or about 1997.

25.  Defendants Allen Harrington, Celtron International, Ltd., and Amanda Harrington (as an officer of Celtron International, Ltd.), breached the Contract by refusing to issue to Plaintiff Jay B. Ross any shares in Defendant Celtron International, Ltd. and its successors.

26.  Plaintiffs have repeatedly demanded the shares in Defendant Celtron International, Ltd. and its successors, but Defendants have refused to comply with the Contract.

**C.   Defendants' Fraudulent and Criminal Conduct.**

27.  Et Voila! European Cafes, Inc. was a public corporation organized under the laws of the State of Nevada on April 4, 1998.

28.  On or about June 20, 2001, Et Voila! European Cafes, Inc. bought all the assets of Defendant Celtron International, Ltd.  It was effectively a shell corporation at the time it bought Defendant Celtron International, Ltd.'s assets.

29.  Et Voila! European Cafes, Inc.'s 2001 Form 10-KSB dated April 1, 2002 notes that Defendants Allen Harrington, Amanda Harrington, and Celtron International, Ltd. owned 12

million shares of Et Voila! European Cafes, Inc.'s common stock, a total of 77.42%.

30. Et Voila! European Cafes, Inc.'s 2001 Form 10-KSB failed to disclose that Plaintiff Jay B. Ross owned and/or was entitled to fifteen percent (15%) of Defendant Allen Harrington's shares, the equivalent of 1.8 million shares.

31. Plaintiff Jay B. Ross' 1.8 million shares constituted twelve percent (12%) of the outstanding shares, mandating disclosure under securities laws.

32. Defendant Allen Harrington, President and Director, and Defendant Amanda Harrington, Treasurer, certified the accuracy of these representations in the Form 10-KSB on April 1, 2002.

33. Defendants Allen Harrington and Amanda Harrington knew at the time they made these representations and/or omissions that they were inaccurate.

34. Defendant Marius Jordaan, Director, knew at the time of the 10-KSB that these representations and/or omissions were inaccurate.

35. In July 2001, Et Voila! European Cafes, Inc. changed its name to Celtron International, Inc., thus completing the transformation of Defendant Celtron International, Ltd. from an Irish corporation to Defendant Celtron International, Inc. – an American corporation traded on the NASDAQ.

36.   Et Voila! European Cafes, Inc.'s August 31, 2001 Form 13D filing also failed to disclose the ownership interest of Plaintiff Jay B. Ross' 1.8 million shares.

37.   Defendant Allen Harrington certified the accuracy of the Form 13D on August 31, 2001.

38.   Defendant Allen Harrington knew at the time he made these representations and/or omissions that they were inaccurate.

39.   On October 22, 2004, Defendant Celtron International, Inc. filed an Amended S-8 to register 4.5 million shares to compensate its employees.

40.   This Amended S-8 failed to disclose the ownership interest of Plaintiff Jay B. Ross' 1.8 million shares.

41.   Defendants Allen Harrington, Amanda Harrington, Marius Jordaan, and Ronald Pienaar certified the accuracy of these representations in the Amended S-8 on October 21, 2004.

42.   Defendants Allen Harrington, Amanda Harrington, Marius Jordaan, and Ronald Pienaar knew at the time Defendant Celtron International, Inc. made these representations and/or omissions that they were inaccurate.

43.   Defendant Kenneth Eade, as legal counsel to Defendant Celtron International, Inc. on the Amended S-8, knew at the time Defendant Celtron International, Inc. made these representations and/or omissions that they were inaccurate.

44. Defendant Cordovano and Honeck, P.C., as independent auditor to Defendant Celtron International, Inc. on the Amended S-8, knew at the time Defendant Celtron International, Inc. made these representations and/or omissions that they were inaccurate.

45. On September 15, 2004, Defendant Celtron International, Inc. filed a Form 8-K disclosing its negotiations to sell a subsidiary, PayCell, Inc., to Knight Fuller, Inc.

46. Defendant Celtron International, Inc. failed to disclose in the Form 8-K the ownership interest of Plaintiff Jay B. Ross' 1.8 million shares.

47. Defendant Allen Harrington certified the accuracy of these representations in the 8-K on September 13, 2004.

48. Defendants Allen Harrington, Amanda Harrington, Marius Jordaan, Ronald Pienaar, and Kenneth Eade knew at the time Defendant Celtron International, Inc. made these representations and/or omissions that they were inaccurate.

49. On May 26, 2004, Defendant Celtron International, Inc. filed a Form 10-KSB/A. Defendants Allen Harrington, Amanda Harrington, Marius Jordaan, and Ronald Pienaar certified the accuracy of this Form 10-KSB/A on May 19, 2004.

50. This Form 10-KSB/A failed to disclose the ownership interest of Plaintiff Jay B. Ross' 1.8 million shares.

10

51.  Defendants Allen Harrington, Amanda Harrington, Marius Jordaan, Ronald Pienaar, and Kenneth Eade knew at the time Defendant Celtron International, Inc. made these representations and/or omissions that they were inaccurate.

52.  By e-mail to Plaintiff Jay B. Ross dated July 9, 2001 from South Africa to Lambertville, New Jersey, Defendant Allen Harrington acknowledged that Plaintiff Jay B. Ross was entitled under the Contract to shares in Defendant Celtron International, Inc.  Defendant Allen Harrington knew at the time he made these representations to Plaintiff that he had no intention of ever issuing the shares to Plaintiff Jay B. Ross.

53.  By e-mail to Plaintiff Jay B. Ross dated July 24, 2001 from South Africa to Lambertville, New Jersey, Defendant Allen Harrington indicated that Defendant Zirk Engelbrecht, a notorious penny stock promoter from South Africa, and he were manipulating Defendant Celtron International, Inc.'s thinly traded penny stock to get it above $2 a share to attract investors.

54.  By e-mail to Plaintiff Jay B. Ross dated September 4, 2001 from South Africa to Lambertville, New Jersey, Defendant Allen Harrington acknowledged Plaintiff Jay B. Ross' ownership interest in Defendant Celtron International, Inc.'s stock. Defendant Allen Harrington knew at the time he made these

representations to Plaintiff Jay B. Ross that he had no intention of ever issuing the shares to Plaintiff Jay B. Ross.

55. By e-mail to Plaintiff Jay B. Ross dated April 16, 2002 from South Africa to Lambertville, New Jersey, Defendant Allen Harrington acknowledged Plaintiff Jay B. Ross' ownership interest in Defendant Celtron International, Inc.'s stock. Defendant Allen Harrington knew at the time he made these representations to Plaintiff that he had no intention of ever issuing the shares to Plaintiff Jay B. Ross.

56. By e-mail to Plaintiff Jay B. Ross dated November 11, 2002 from South Africa to Lambertville, New Jersey, Defendant Allen Harrington informed Plaintiff Jay B. Ross that Plaintiff Jay B. Ross indirectly owned 1.8 million shares of Defendant Celtron International, Inc., but Defendant Allen Harrington could not cause the issuance of those shares because they were restricted until November 2004. Defendant Allen Harrington knew at the time he made these representations to Plaintiff that he had no intention of ever issuing the shares to Plaintiff Jay B. Ross.

57. By e-mail to Plaintiff Jay B. Ross dated November 15, 2002 from South Africa to Lambertville, New Jersey, Defendant Allen Harrington discussed the Et Voila! European Cafes, Inc.-to-Celtron International, Inc. conversion and acknowledged that Plaintiff Jay B. Ross owned fifteen percent (15%) of Defendant

12

Allen Harrington's shares in Defendant Celtron International, Inc. Defendant Allen Harrington calculated that Plaintiff Jay B. Ross was entitled to 1.8 million shares of Defendant Celtron International, Inc. (12% of all shares outstanding). Defendant Allen Harrington knew at the time he made these representations to Plaintiff that he had no intention of ever issuing the shares to Plaintiff Jay B. Ross.

58. By e-mail to Plaintiff Jay B. Ross dated November 15, 2002 from South Africa to Lambertville, New Jersey, Defendant Allen Harrington again acknowledged Plaintiff Jay B. Ross' entitlement to shares in Defendant Celtron International, Inc., but told Plaintiff Jay B. Ross to wait because Defendant Allen Harrington was trying to save the company for all shareholders, including Plaintiff Jay B. Ross. Defendant Allen Harrington knew at the time he made these representations to Plaintiff that he had no intention of ever issuing the shares to Plaintiff Jay B. Ross.

59. All of the above e-mails and securities filings constitute activities that affect trade or commerce.

60. Despite the expiration of the purported stock restriction period in November 2004, Defendants Allen Harrington, Amanda Harrington, Marius Jordaan, Ron Pienaar, Kenneth Eade, Cordovano and Honeck, P.C., Rogelio Castro, and Celtron International, Inc. have refused to issue and/or

13

disclose the 1.8 million shares of Defendant Celtron International, Inc. stock to which Plaintiff Jay B. Ross is entitled under the Contract.

**D.   Professional Negligence by Kenneth Eade, Cordovano and Honeck, P.C., Rogelio Castro, and ABC Corporations 1-100.**

**i.   Legal Malpractice by Kenneth Eade.**

61.   Defendant Kenneth Eade, as Legal Counsel to Defendant Celtron International, Inc. and its predecessors, had a duty to all investors, including Plaintiff Jay B. Ross, to ensure the accuracy of statements in securities filings and to act with due diligence to investigate the accuracy of Defendant Celtron International, Inc.'s representations.

62.   Through due diligence, Defendant Kenneth Eade reasonably could have discovered the twelve-percent (12%) ownership interest of Plaintiff Jay B. Ross and informed Defendant Celtron International, Inc. and/or each of its directors and/or officers to disclose this ownership interest to the public and investors and advise them to issue the shares as a matter of law.

63.   Defendant Kenneth Eade failed to conduct proper due diligence in his legal services to Defendant Celtron International, Inc. and its predecessors.

64.   Defendant Kenneth Eade, a sophisticated securities attorney, had reason to believe that Plaintiff Jay B. Ross and

14

other investors would rely on his legal services to Defendant Celtron International, Inc. and its predecessors.

65.   Plaintiff Jay B. Ross reasonably relied on Defendant Kenneth Eade's legal services to protect his interests as a large shareholder in Defendant Celtron International, Inc. and its predecessors.

66.   Plaintiff Jay B. Ross has suffered damages due to Defendant Kenneth Eade's negligence in rendering professional legal services to Defendant Celtron International, Inc. and its predecessors.

### ii.   Accountancy Malpractice by Cordovano and Honeck, P.C.

67.   Defendant Cordovano and Honeck, P.C., as accountants and independent auditors of Defendant Celtron International, Inc., had a duty to all investors, including Plaintiff Jay B. Ross, to ensure the accuracy of statements in securities filings and to act with due diligence to investigate the accuracy of Defendant Celtron International, Inc.'s representations.

68.   Through due diligence, Defendant Cordovano and Honeck, P.C. could have discovered the twelve-percent (12%) ownership interest of Plaintiff Jay B. Ross and informed Defendant Celtron International, Inc. and/or each of its directors and/or officers to disclose this ownership interest to the public and investors.

69.   Defendant Cordovano and Honeck, P.C. failed to conduct proper due diligence in its professional services to Defendant Celtron International, Inc.

70.   Since Defendant Celtron International, Inc. stated in its May 19, 2004 Form 10-KSB/A that its previous independent auditors resigned in December 2003 due to disagreements with the management of Defendant Celtron International, Inc., Defendant Cordovano and Honeck, P.C. had reason to believe that it should scrutinize the accounting practices and representations of Defendant Celtron International, Inc. and its management.

71. As an independent auditor of public companies, Defendant Cordovano and Honeck, P.C. had reason to believe that Plaintiff Jay B. Ross and other investors would rely on its accounting and auditor services to Defendant Celtron International, Inc.

72.   Plaintiff Jay B. Ross reasonably relied on Defendant Cordovano and Honeck, P.C.'s accounting and auditor services to protect his interests as a large shareholder in Defendant Celtron International, Inc.

73.   Plaintiff Jay B. Ross has suffered damages due to Defendant Cordovano and Honeck, P.C.'s negligence in rendering professional accounting and auditor services to Defendant Celtron International, Inc.

**iii. Accountancy Malpractice by Rogelio Castro.**

16

74.  Defendant  Rogelio  Castro,  as  an  accountant  and
independent  auditor  of  Defendant  Celtron  International,  Inc.,
had a duty to all investors, including Plaintiff Jay B. Ross, to
ensure the accuracy of statements in securities filings and to
act with due diligence to investigate the accuracy of Defendant
Celtron International, Inc.'s representations.

75.  Through due diligence, Defendant Rogelio Castro could
have discovered the twelve-percent (12%) ownership interest of
Plaintiff   Jay   B.   Ross   and   informed   Defendant   Celtron
International, Inc. and/or each of its directors and/or officers
to disclose this ownership interest to the public and investors.

76.  Defendant Rogelio Castro failed to conduct proper due
diligence  in  his  professional  services  to  Defendant  Celtron
International, Inc.

77.  Since Defendant Celtron International, Inc. stated in
its May 19, 2004 Form 10-KSB/A that its previous independent
auditors resigned in December 2003 due to disagreements with the
management of Defendant Celtron International, Inc., Defendant
Rogelio Castro had reason to believe that he should scrutinize
the  accounting  practices  and  representations  of  Defendant
Celtron International, Inc. and its management.

78.  As an independent auditor, Defendant Rogelio Castro
had  reason  to  believe  that  Plaintiff  Jay  B.  Ross  and  other

investors would rely on his accounting and auditor services to Defendant Celtron International, Inc.

79.   Plaintiff Jay B. Ross reasonably relied on Defendant Rogelio Castro's accounting and auditor services to protect his interests as a large shareholder in Defendant Celtron International, Inc.

80.   Plaintiff Jay B. Ross has suffered damages due to Defendant Rogelio Castro's negligence in rendering professional accounting and auditor services to Defendant Celtron International, Inc.

### iv.   Professional Malpractice by ABC Corporations 1-100.

81.   Defendants ABC Corporations 1-100, as legal counsel and/or independent accountants/auditors to Defendant Celtron International, Inc. and its predecessors, had a duty to all investors, including Plaintiff Jay B. Ross, to ensure the accuracy of statements in securities filings and to act with due diligence to investigate the accuracy of the representations by Defendant Celtron International, Inc. and its predecessors.

82.   Through due diligence, Defendants ABC Corporations 1-100 reasonably could have discovered the twelve-percent (12%) ownership interest of Plaintiff Jay B. Ross and informed Defendant Celtron International, Inc., its predecessors, and/or each of its directors and/or officers to disclose this ownership

18

interest to the public and investors and to advise them to issue the shares.

83.   Defendants ABC Corporations 1-100 failed to conduct proper due diligence in their professional services to Defendant Celtron International, Inc. and its predecessors.

84.   Defendants ABC Corporations 1-100, sophisticated professional firms, had reason to believe that Plaintiff Jay B. Ross and other investors would rely on their professional services to Defendant Celtron International, Inc. and its predecessors.

85.   Plaintiff Jay B. Ross reasonably relied on Defendants ABC Corporations 1-100's professional services to protect his interests as a large shareholder in Defendant Celtron International, Inc. and its predecessors.

86.   Plaintiff Jay B. Ross has suffered damages due to Defendants ABC Corporations 1-100's negligence in rendering professional services to Defendant Celtron International, Inc. and its predecessors.

**E.   Negligent Misrepresentations by Allen Harrington, Amanda Harrington, Marius Jordaan, and Ron Pienaar as Directors and Officers of Celtron International, Inc.**

87.   Defendants Allen Harrington, Amanda Harrington, Marius Jordaan, and Ron Pienaar, as directors and officers of Defendant Celtron International, Inc. and its predecessors, had a duty to

all investors, including Plaintiff Jay B. Ross, to ensure the accuracy of statements in securities filings.

88. Through due diligence, Defendants Allen Harrington, Amanda Harrington, Marius Jordaan, and Ron Pienaar reasonably could have discovered the twelve-percent (12%) ownership interest of Plaintiff Jay B. Ross and informed Defendant Celtron International, Inc. and/or each of its directors and/or officers to disclose this ownership interest to the public and investors and to advise them to issue the shares.

89. Defendants Allen Harrington, Amanda Harrington, Marius Jordaan, and Ron Pienaar failed to conduct proper due diligence in their roles as directors and/or officers of Defendant Celtron International, Inc. and its predecessors.

90. Defendants Allen Harrington, Amanda Harrington, Marius Jordaan, and Ron Pienaar, sophisticated business people, had reason to believe that Plaintiff Jay B. Ross and other investors would rely on the representations in the securities filings of Defendant Celtron International, Inc. and its predecessors.

91. Plaintiff Jay B. Ross reasonably relied on Defendants Allen Harrington, Amanda Harrington, Marius Jordaan, and Ron Pienaar to protect his interests as a large shareholder in Defendant Celtron International, Inc. and its predecessors.

92. Plaintiff Jay B. Ross has suffered damages due to the negligence of Defendants Allen Harrington, Amanda Harrington, Marius Jordaan, and Ron Pienaar.

## COUNT I

### BREACH OF CONTRACT

93. Plaintiffs repeat and incorporate the facts alleged in the preceding paragraphs.

94. The Contract between Plaintiff Protocol Electronics, Inc. and Defendant Celtron International, Ltd. (and its successors Et Voila! European Cafes, Inc. and Defendant Celtron International, Inc.) is valid and binding.

95. Plaintiff Jay B. Ross is an express third-party beneficiary of the Contract.

96. Plaintiffs fully performed all obligations under the Contract.

97. Defendant Celtron International, Ltd. (and its successors Et Voila! European Cafes, Inc. and Defendant Celtron International, Inc.) failed to perform their obligations under the Contract, including, but not limited to, the issuance to Plaintiff Jay B. Ross of 1.8 million shares of Defendant Celtron International, Inc. stock after the purported restriction period ended in November 2004.

98.  Plaintiff Jay B. Ross has suffered damages as a direct result of Defendant Celtron International, Ltd.'s (and its successors') breach of the Contract.

**WHEREFORE**, Plaintiffs demand judgment against Defendants awarding Plaintiffs compensatory damages, punitive damages, attorneys' fees and costs of suit, pre- and post-judgment interest, and such other and further relief as the Court deems just and proper in law or equity.

## COUNT II

### PROMISSORY ESTOPPEL

99.  Plaintiffs repeat and incorporate the facts alleged in the preceding paragraphs.

100. Defendants Allen Harrington, Celtron International, Ltd., and Celtron International, Inc. made a clear and definite promise to Plaintiffs that Plaintiff Jay B. Ross would receive 1.8 million shares of Defendant Celtron International, Inc. after the purported two-year restriction period ended in November 2004.

101. Defendants Allen Harrington, Celtron International, Ltd., and Celtron International, Inc. expected that Plaintiffs would rely on their promise that the stock would be issued.

102. Plaintiff Jay B. Ross reasonably relied on these promises.

103. Plaintiff Jay B. Ross has suffered damages as a direct result of his reliance on the promises of Defendants Allen Harrington, Celtron International, Ltd., and Celtron International, Inc.

**WHEREFORE**, Plaintiffs demand judgment against Defendants awarding Plaintiffs compensatory damages, punitive damages, attorneys' fees and costs of suit, pre- and post-judgment interest, and such other and further relief as the Court deems just and proper in law or equity.

### COUNT III

#### COMMON LAW FRAUD

104. Plaintiffs repeat and incorporate the facts alleged in the preceding paragraphs.

105. Defendants Allen Harrington, Celtron International, Ltd., and Celtron International, Inc. repeatedly made false representations to Plaintiff Jay B. Ross that Plaintiff Jay B. Ross would receive 1.8 million shares of stock in Defendant Celtron International, Inc.

106. Defendants Allen Harrington, Celtron International, Ltd., and Celtron International, Inc. knew or believed these repeated representations to be false.

107. Defendants Allen Harrington, Celtron International, Ltd., and Celtron International, Inc. intended to deceive Plaintiff Jay B. Ross with these repeated false representations.

23

108. Plaintiff Jay B. Ross believed Defendants Allen Harrington, Celtron International. Ltd., and Celtron International, Inc.'s representations and justifiably relied on them when he waited until November 2004 to get his 1.8 million shares issued after a purported restriction period expired.

109. As a direct result of Defendants Allen Harrington, Celtron International. Ltd., and Celtron International, Inc.'s representations, Plaintiff Jay B. Ross has sustained damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendants awarding Plaintiffs compensatory damages, punitive damages, attorneys' fees and costs of suit, pre- and post-judgment interest, and such other and further relief as the Court deems just and proper in law or equity.

## COUNT IV

### SECURITIES FRAUD

**VIOLATIONS OF 15 U.S.C. § 78j(b) and 17 C.F.R. 240.10b-5**

110. Plaintiffs repeat and incorporate the facts alleged in the preceding paragraphs.

111. Defendants, through interstate commerce and the NASDAQ securities exchange, made materially false statements and/or omissions of material facts regarding the stock ownership of Defendant Celtron International, Inc. and its predecessors.

112. Defendants made these representations in connection with Plaintiff Jay B. Ross' acquisition of 1.8 million shares of Defendant Celtron International, Inc. and its predecessors.

113. Defendants made these materially false statements and/or omissions with knowledge of and/or reckless disregard as to their falsity.

114. Plaintiff Jay B. Ross relied upon Defendants' materially false statements and/or omissions to his detriment by continuing to believe that he would get 1.8 million shares after the purported two-year restriction period ended in November 2004.

115. As a direct result of Defendants' actions and/or omissions, Plaintiff Jay B. Ross has suffered damages in the loss of 1.8 million shares that traded as high as $2.10 on August 15, 2003 and currently trade at approximately $1.45.

116. Each Defendant is primarily liable for Plaintiff Jay B. Ross' damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendants awarding Plaintiffs compensatory damages, punitive damages, attorneys' fees and costs of suit, pre- and post-judgment interest, and such other and further relief as the Court deems just and proper in law or equity.

### COUNT V

### SECURITIES FRAUD

### VIOLATIONS OF 15 U.S.C. § 78r(a)

117. Plaintiffs repeat and incorporate the facts alleged in the preceding paragraphs.

118. Defendants, through interstate commerce and the NASDAQ securities exchange, made materially false statements and/or omissions of material facts in documents required to be filed by the Securities and Exchange Commission regarding the stockholders of Defendant Celtron International, Inc. and its predecessors.

119. Defendants' specific representations regarding Defendant Celtron International, Inc.'s business prospects and the amount of shares owned by Defendant Allen Harrington induced Plaintiff Jay B. Ross to act by continuing to work on projects with Defendants because he believed that his efforts would

enhance the value of his 1.8 million shares of Defendant Celtron International, Inc. and its predecessors.

120. Plaintiff Jay B. Ross relied upon Defendants' materially false statements and/or omissions to his detriment by continuing to believe that he would get 1.8 million shares after the purported two-year restriction period ended in November 2004.

121. Defendants' misrepresentations and/or omissions affected the stock price of shares in Defendant Celtron International, Inc. and its predecessors by leading investors to believe that there were no other large shareholders in Defendant Celtron International, Inc. and its predecessors, therefore obscuring the possibility of a change of control and the true stock ownership and/or incentives of management.

122. As a direct result of Defendants' actions and/or omissions, Plaintiff Jay B. Ross has suffered damages in the loss of 1.8 million shares that traded as high as $2.10 on August 15, 2003 and currently trade at approximately $1.45.

123. Each Defendant is primarily liable for Plaintiff Jay B. Ross' damages.

**WHEREFORE,** Plaintiffs demand judgment against Defendants awarding Plaintiffs compensatory damages, punitive damages, attorneys' fees and costs of suit, pre- and post-judgment

interest, and such other and further relief as the Court deems just and proper in law or equity.

**COUNT VI**

**NEW JERSEY CIVIL RICO VIOLATIONS – N.J.S.A. 2C:41-2(c)**

124. Plaintiffs repeat and incorporate the facts alleged in the preceding paragraphs.

**A.   Relevant Times of Defendants' Corrupt Acts.**

125. Defendants' corrupt actions began to take place on June 20, 2001 (the beginning of the fraudulent actions in connection with securities) and continue to this day by their fraudulent misrepresentations and refusal to issue to Plaintiff Jay B. Ross 1.8 million shares of stock in Defendant Celtron International, Inc.  These corrupt actions include, but are not limited to, fraudulent e-mails (constituting wire fraud) and the filing of fraudulent information in numerous securities reports (constituting securities fraud) that affect trade or commerce.

126. As detailed above, these acts are numerous, ongoing, and substantial.

**B.   Participants in the Corrupt Scheme.**

127. Defendant Allen Harrington was Chairman of the Board of Directors, Chief Executive Officer, Secretary, director, and a major stockholder of Defendant Celtron International, Inc.  He was also an officer, director, and major stockholder of its predecessors.  He has repeatedly certified the alleged truth of

28

materially false statements in Defendant Celtron International, Inc.'s public securities filings and its predecessors.  He has repeatedly issued false and fraudulent statements to Plaintiff Jay B. Ross to deprive Plaintiff Jay B. Ross of his entitlement to 1.8 million shares of Defendant Celtron International, Inc. He has repeatedly perpetrated these frauds to deprive Plaintiff Jay B. Ross of the shares, to manipulate Defendant Celtron International, Inc.'s stock price to attract more capital, and to enrich himself.

128. Defendant Amanda Harrington was Chief Financial Officer and a major stockholder of Celtron International, Inc. She was also an officer, director, and major stockholder of its predecessors.  She has repeatedly certified the alleged truth of materially false statements in Defendant Celtron International, Inc.'s public securities filings.  She is aware of Defendant Allen Harrington's fraudulent conduct and knowingly assists him and others in repeatedly allowing false statements to appear in the securities filings of Defendant Celtron International, Inc. and its predecessors, depriving Plaintiff Jay B. Ross of his shares, manipulating Defendant Celtron International, Inc.'s stock price to attract more capital and to enrich herself.

129. Defendant Marius Jordaan was a director of Celtron International, Inc.  He has repeatedly certified the alleged truth of materially false statements in Defendant Celtron

International, Inc.'s public securities filings.  He is aware of Defendant Allen Harrington's fraudulent conduct and knowingly assists him and others in repeatedly allowing false statements to appear in the securities filings of Defendant Celtron International, Inc. and its predecessors, depriving Plaintiff Jay B. Ross of his shares, manipulating Defendant Celtron International, Inc.'s stock price to attract more capital and to enrich himself.

130. Defendant Ron Pienaar was a director of Celtron International, Inc.  He has repeatedly certified the alleged truth of materially false statements in Defendant Celtron International, Inc.'s public securities filings.  He is aware of Defendant Allen Harrington's fraudulent conduct and knowingly assists him and others in repeatedly allowing false statements to appear in the securities filings of Defendant Celtron International, Inc. and its predecessors, depriving Plaintiff Jay B. Ross of his shares, manipulating Defendant Celtron International, Inc.'s stock price to attract more capital and to enrich himself.  In an e-mail to Plaintiff Jay B. Ross dated November 21, 2003, Defendant Ron Pienaar admitted he knew that Defendant Allen Harrington and Defendant Zirk Engelbrecht had a reputation for securities fraud, but he instructed Plaintiff Jay B. Ross to ignore their reputations as journalistic sensationalism.

131. Defendant Kenneth Eade, Esq. served as legal counsel to, and a large shareholder of, Defendant Celtron International, Inc.  He manipulated the price of the stock by selling large quantities of his shares.  He is aware of Defendant Allen Harrington's fraudulent conduct and knowingly assists him and others in repeatedly allowing false statements to appear in the securities filings of Defendant Celtron International, Inc. and its predecessors, depriving Plaintiff Jay B. Ross of his shares, manipulating Defendant Celtron International, Inc.'s stock price to attract more capital and to enrich himself.

132. Defendant Cordovano and Honeck, P.C. is an accounting firm that served as the independent auditors for Defendant Celtron International, Inc. and its subsidiaries.  It is aware of Defendant Allen Harrington's fraudulent conduct and knowingly assists him and others in repeatedly allowing false statements to appear in the securities filings of Defendant Celtron International, Inc. and its predecessors and in depriving Plaintiff Jay B. Ross of his shares.

133. Defendant Rogelio Castro was an accountant who served as the independent auditor for Defendant Celtron International, Inc. and its subsidiaries.  He is aware of Defendant Allen Harrington's fraudulent conduct and knowingly assists him and others in repeatedly allowing false statements to appear in the securities filings of Defendant Celtron International, Inc. and

its predecessors and in depriving Plaintiff Jay B. Ross of his shares.

134. Defendant Zirk Engelbrecht was an agent of Defendant Allen Harrington, Defendant Celtron International, Ltd., and/or Defendant Celtron International, Inc. as a stock promoter. He is aware of Defendant Allen Harrington's fraudulent conduct and knowingly assists him and others in depriving Plaintiff Jay B. Ross of his shares and manipulating Defendant Celtron International, Inc.'s stock price to attract more capital and to enrich himself.

135. Defendants ABC Corporations 1-100 are law and/or accounting firms who provided professional services to Defendant Celtron International, Inc. and its predecessors. They are aware of Defendant Allen Harrington's fraudulent conduct and knowingly assist him and others in repeatedly allowing false statements to appear in the securities filings of Defendant Celtron International, Inc. and its predecessors and in depriving Plaintiff Jay B. Ross of his shares.

**C.    The Corrupt Enterprise.**

136. Defendants Allen Harrington, Amanda Harrington, Marius Jordaan, Ron Pienaar, Kenneth Eade, Cordovano and Honeck, P.C., Rogelio Castro, ABC Corporations 1-100, and Zirk Engelbrecht associate together as members of a corrupt enterprise whose activities affect trade or commerce.

32

137. The corrupt enterprise is organized through a division of labor to achieve a common purpose of enriching itself by defrauding Plaintiff Jay B. Ross and other investors.

138. Defendant Allen Harrington's role included defrauding Plaintiff Jay B. Ross to induce Plaintiffs to develop the Product for Defendant Celtron International, Ltd. and its successors. He continued his scheme of deception by repeatedly allowing Defendant Celtron International, Inc. to issue false statements in securities filings and promising Plaintiff Jay B. Ross that his shares would arrive after the expiration of a purported two-year stock restriction period and issuing materially false statements in securities filings.

139. Defendants Amanda Harrington, Marius Jordaan, and Ron Pienaar's roles included assisting Defendant Allen Harrington in his defrauding of Plaintiff Jay B. Ross, repeatedly allowing Defendant Celtron International, Inc. to issue false statements in securities filings, and assuring Plaintiff Jay B. Ross that Defendants Allen Harrington and Zirk Engelbrecht were legitimate businessmen rather than swindlers. As officers and directors, they further participated in the enterprise by refusing to allow Defendant Celtron International, Inc. to issue the shares to Plaintiff Jay B. Ross and issuing materially false statements in securities filings.

140. Defendant Kenneth Eade, Esq. participates in the enterprise by using his legal skills and stock manipulation to defraud Plaintiff Jay B. Ross and other investors and enabling the management of Defendant Celtron International, Inc. to continue its pattern of issuing fraudulent statements that violate securities laws. These actions assist Defendant Celtron International, Inc.'s management to raise additional funds, manipulate the stock price, and enrich themselves.

141. Defendants Cordovano and Honeck, P.C. and Rogelio Castro participate in the enterprise by using their accountancy skills to defraud Plaintiff Jay B. Ross and other investors and enabling the management of Defendant Celtron International, Inc. to continue its pattern of issuing fraudulent statements that violate securities laws. These actions assist Defendant Celtron International, Inc.'s management to raise additional funds, manipulate the stock price, and pocket more money for themselves.

142. Defendants ABC Corporations 1-100 participate in the enterprise by using their legal and/or accountancy skills to defraud Plaintiff Jay B. Ross and other investors and enabling the management of Defendant Celtron International, Inc. to continue its pattern of issuing fraudulent statements that violate securities laws. These actions assist Defendant Celtron International, Inc.'s management to raise additional funds,

manipulate the stock price, and pocket more money for themselves.

**D.   Relatedness of the Pattern of Racketeering Activity.**

143. The above acts embrace criminal and/or fraudulent conduct.

144. Many of the above criminal acts violate N.J.S.A. 2C:2-6 (conspiracy), 2C:20-3 (theft by unlawful taking), 2C:20-4 (theft by deception), 2C:20-7 (receiving stolen property), 2C:21-3 (filing false documents), 2C:21-4 (issuing false financial statements), 2C:21-7e (deceptive business practices), 2C:21-10(a) (breach of duty to act disinterestedly), 2C:21-25 (money laundering), 2C:28-2 (false statement under oath), 2C:28-3 (false unsworn statement), and 2C:30-2 (official misconduct).

145. The above acts began on June 20, 2001 and continue to this day.

146. The above acts relate to each other by a common purpose of defrauding Plaintiff Jay B. Ross and other investors all for the purpose of enriching the corrupt enterprise.

147. The above acts violate N.J.S.A. 2C:41-2c of the New Jersey Racketeering Influenced and Corrupt Organizations Act.

148. Plaintiff Jay B. Ross has suffered damages as a direct result of Defendants' violations of N.J.S.A. 2C:41-2c by Defendants' refusal to issue to Plaintiff Jay B. Ross 1.8 million shares of Defendant Celtron International, Inc.

**WHEREFORE,** Plaintiffs demand judgment against Defendants awarding Plaintiffs trebled compensatory damages, punitive damages, attorneys' fees and costs of suit, pre- and post-judgment interest, and such other and further relief as the Court deems just and proper in law or equity.

**COUNT VII**

**NEW JERSEY CIVIL RICO CONSPIRACY – N.J.S.A. 2C:41-2(d)**

149. Plaintiffs repeat and incorporate the facts alleged in the preceding paragraphs.

150. Defendants Allen Harrington, Amanda Harrington, Marius Jordaan, Ron Pienaar, Kenneth Eade, Cordovano and Honeck, P.C., Rogelio Castro, ABC Corporations 1-100, and Zirk Engelbrecht agreed to commit acts that violate N.J.S.A. 2C:41-2c by participating in the affairs of the corrupt enterprise.

151. Defendants' corrupt actions began to take place on June 20, 2001 (the beginning of the fraudulent actions in connection with securities) and continue to this day by their fraudulent refusal to issue to Plaintiff Jay B. Ross 1.8 million shares of stock in Defendant Celtron International, Inc. These corrupt actions include fraudulent e-mails (constituting wire fraud) and filing of fraudulent information in numerous securities reports (constituting securities fraud).

152. As detailed above, these acts are criminal, numerous, ongoing, substantial, and affect trade or commerce.

36

153. The above acts of conspiracy violate N.J.S.A. 2C:41-2d of the New Jersey Racketeering Influenced and Corrupt Organizations Act.

154. Plaintiff Jay B. Ross has suffered damages as a direct result of Defendants' violations of N.J.S.A. 2C:41-2d by Defendants' refusal to issue to Plaintiff Jay B. Ross 1.8 million shares of Defendant Celtron International, Inc.

**WHEREFORE,** Plaintiffs demand judgment against Defendants awarding Plaintiffs trebled compensatory damages, punitive damages, attorneys' fees and costs of suit, pre- and post-judgment interest, and such other and further relief as the Court deems just and proper in law or equity.

**COUNT VIII**

**PROFESSIONAL NEGLIGENCE – KENNETH EADE**

155. Plaintiffs repeat and incorporate the facts alleged in the preceding paragraphs.

156. Defendant Kenneth Eade is an attorney admitted in California who practices securities law.

157. Defendant Celtron International, Inc. and its predecessors retained him to render legal advice.

158. Defendant Kenneth Eade, being engaged in the practice of law, represented that he would employ the knowledge and skill normally possessed and used by the average attorney practicing securities law.

159. Defendant Kenneth Eade, in his representation of Defendant Celtron International, Inc. and its predecessors, failed to employ the knowledge and skill normally possessed and used by the average attorney practicing securities law.

160. Defendant Kenneth Eade had reason to believe that Plaintiff Jay B. Ross, as an investor and stockholder, would rely on his representation of Defendant Celtron International, Inc. and its predecessors.

161. Through Defendant Kenneth Eade's breach of his duty to use the ordinary knowledge and skill normally possessed and used by the average attorney practicing securities law, Defendant Celtron International, Inc. and its predecessors have been allowed to withhold the 1.8 million shares due to Plaintiff Jay B. Ross.

162. Accordingly, Plaintiff Jay B. Ross has suffered damages as a direct result of Defendant Kenneth Eade's actions and/or omissions.

**WHEREFORE**, Plaintiffs demand judgment against Defendants awarding Plaintiffs compensatory damages, punitive damages, attorneys' fees and costs of suit, pre- and post-judgment interest, and such other and further relief as the Court deems just and proper in law or equity.

## COUNT IX

### PROFESSIONAL NEGLIGENCE – CORDOVANO AND HONECK, P.C.

163. Plaintiffs repeat and incorporate the facts alleged in the preceding paragraphs.

164. Defendant Cordovano and Honeck, P.C. is an accounting firm conducting business in Denver, Colorado.

165. Defendant Celtron International, Inc. retained Defendant Cordovano and Honeck, P.C. to render independent accounting and auditor services.

166. Defendant Cordovano and Honeck, P.C., being engaged in the practice of accountancy, represented that it would employ the knowledge and skill normally possessed and used by the average accountant who audits securities filings.

167. Defendant Cordovano and Honeck, P.C., in providing services to Defendant Celtron International, Inc., failed to employ the knowledge and skill normally possessed and used by the average accountant who audits securities filings.

168. Defendant Cordovano and Honeck, P.C., had reason to believe that Plaintiff Jay B. Ross, as an investor and stockholder, would rely on its independent audits of Defendant Celtron International, Inc.

169. Through Defendant Cordovano and Honeck, P.C.'s breach of its duty to use the ordinary knowledge and skill normally possessed and used by the average accountant who audits

39

securities filings, Defendant Celtron International, Inc. has been allowed to withhold the 1.8 million shares due to Plaintiff Jay B. Ross.

170. Accordingly, Plaintiff Jay B. Ross has suffered damages as a direct result of Defendant Cordovano and Honeck, P.C.'s actions and/or omissions.

**WHEREFORE**, Plaintiffs demand judgment against Defendants awarding Plaintiffs compensatory damages, punitive damages, attorneys' fees and costs of suit, pre- and post-judgment interest, and such other and further relief as the Court deems just and proper in law or equity.

## COUNT X

### PROFESSIONAL NEGLIGENCE – ROGELIO CASTRO

171. Plaintiffs repeat and incorporate the facts alleged in the preceding paragraphs.

172. Defendant Rogelio Castro is an accountant conducting business in Oxnard, California.

173. Defendant Celtron International, Inc. retained Defendant Rogelio Castro to render independent accounting and auditor services.

174. Defendant Rogelio Castro, being engaged in the practice of accountancy, represented that he would employ the knowledge and skill normally possessed and used by the average accountant who audits securities filings.

40

175. Defendant Rogelio Castro, in providing services to Defendant Celtron International, Inc., failed to employ the knowledge and skill normally possessed and used by the average accountant who audits securities filings.

176. Defendant Rogelio Castro, had reason to believe that Plaintiff Jay B. Ross, as an investor and stockholder, would rely on his independent audits of Defendant Celtron International, Inc.

177. Through Defendant Rogelio Castro's breach of his duty to use the ordinary knowledge and skill normally possessed and used by the average accountant who audits securities filings, Defendant Celtron International, Inc. has been allowed to withhold the 1.8 million shares due to Plaintiff Jay B. Ross.

178. Accordingly, Plaintiff Jay B. Ross has suffered damages as a direct result of Defendant Rogelio Castro's actions and/or omissions.

**WHEREFORE**, Plaintiffs demand judgment against Defendants awarding Plaintiffs compensatory damages, punitive damages, attorneys' fees and costs of suit, pre- and post-judgment interest, and such other and further relief as the Court deems just and proper in law or equity.

## COUNT XI

### PROFESSIONAL NEGLIGENCE – ABC CORPORATIONS 1-100

179. Plaintiffs repeat and incorporate the facts alleged in the preceding paragraphs.

180. Defendants ABC Corporations 1-100 are accounting and/or law firms conducting business in the United States.

181. Defendant Celtron International, Inc. and its predecessors retained Defendants ABC Corporations 1-100 to render legal and/or independent accounting and auditor services.

182. Defendants ABC Corporations 1-100, being engaged in the practice of accountancy and/or law, represented that they would employ the knowledge and skill normally possessed and used by the average attorney and/or accountant who renders services related to securities filings.

183. Defendants ABC Corporations 1-100, in providing professional services to Defendant Celtron International, Inc. and its predecessors, failed to employ the knowledge and skill normally possessed and used by the average attorney and/or accountant who renders services related to securities filings.

184. Defendants ABC Corporations 1-100, had reason to believe that Plaintiff Jay B. Ross, as an investor and stockholder, would rely on their professional services to Defendant Celtron International, Inc. and its predecessors.

185. Through Defendants ABC Corporations 1-100's breach of their duty to use the ordinary knowledge and skill normally possessed and used by the average attorney and/or accountant who renders services related to securities filings, Defendant Celtron International, Inc. and its predecessors have been allowed to withhold the 1.8 million shares due to Plaintiff Jay B. Ross.

186. Accordingly, Plaintiff Jay B. Ross has suffered damages as a direct result of Defendants ABC Corporations 1-100's actions and/or omissions.

**WHEREFORE**, Plaintiffs demand judgment against Defendants awarding Plaintiffs compensatory damages, punitive damages, attorneys' fees and costs of suit, pre- and post-judgment interest, and such other and further relief as the Court deems just and proper in law or equity.

## COUNT XII

### NEGLIGENCE OF DIRECTORS AND OFFICERS

187. Plaintiffs repeat and incorporate the facts alleged in the preceding paragraphs.

188. Defendants Allen Harrington, Amanda Harrington, Marius Jordaan, and Ron Pienaar, as directors and officers of Defendant Celtron International, Inc. and its predecessors, had a duty to all investors, including Plaintiff Jay B. Ross, to ensure the accuracy of statements in securities filings.

43

189. Through due diligence, Defendants Allen Harrington, Amanda Harrington, Marius Jordaan, and Ron Pienaar reasonably could have discovered the twelve-percent (12%) ownership interest of Plaintiff Jay B. Ross and informed Defendant Celtron International, Inc. and/or each of its directors and/or officers to disclose this ownership interest to the public and investors.

190. Defendants Allen Harrington, Amanda Harrington, Marius Jordaan, and Ron Pienaar failed to conduct proper due diligence in their roles as directors and/or officers of Defendant Celtron International, Inc. and its predecessors.

191. Defendants Allen Harrington, Amanda Harrington, Marius Jordaan, and Ron Pienaar, each a sophisticated business person, had reason to believe that Plaintiff Jay B. Ross and other investors would rely on the representations in the securities filings of Defendant Celtron International, Inc. and its predecessors.

192. Plaintiff Jay B. Ross reasonably relied on Defendants Allen Harrington, Amanda Harrington, Marius Jordaan, and Ron Pienaar to protect his interests as a large shareholder in Defendant Celtron International, Inc. and its predecessors.

193. Plaintiff Jay B. Ross has suffered damages due to the negligence of Defendants Allen Harrington, Amanda Harrington, Marius Jordaan, and Ron Pienaar in their capacity as directors

44

and officers of Defendant Celtron International, Inc. and its predecessors.

**WHEREFORE**, Plaintiffs demand judgment against Defendants awarding Plaintiffs compensatory damages, punitive damages, attorneys' fees and costs of suit, pre- and post-judgment interest, and such other and further relief as the Court deems just and proper in law or equity.

### COUNT XIII

### TORTIOUS INTERFERENCE WITH CONTRACT

194. Plaintiffs repeat and incorporate the facts alleged in the preceding paragraphs.

195. The Contract between Plaintiff Protocol Electronics, Inc. and Defendant Celtron International, Ltd. (and its successors Et Voila! European Cafes, Inc. and Defendant Celtron International, Inc.) is valid and binding.

196. Plaintiff Jay B. Ross is an express third-party beneficiary of the Contract.

197. Defendants Allen Harrington, Amanda Harrington, Marius Jordaan, Ron Pienaar, Kenneth Eade, Cordovano and Honeck, P.C., Rogelio Castro, ABC Corporations 1-100, and Zirk Engelbrecht were fully aware of the Contract.

198. Defendants Allen Harrington, Amanda Harrington, Marius Jordaan, Ron Pienaar, Kenneth Eade, Cordovano and Honeck, P.C., Rogelio Castro, ABC Corporations 1-100, and Zirk

Engelbrecht intentionally and maliciously interfered with the Contract by causing Defendant Celtron International, Ltd. (and its successors Et Voila! European Cafes, Inc. and Defendant Celtron International, Inc.) to breach the Contract.

199. As a direct result of the conduct of Defendants Allen Harrington, Amanda Harrington, Marius Jordaan, Ron Pienaar, Kenneth Eade, and Cordovano and Honeck, P.C., Rogelio Castro, ABC Corporations 1-100, and Zirk Engelbrecht, Defendant Celtron International, Ltd. (and its successors Et Voila! European Cafes, Inc. and Defendant Celtron International, Inc.) failed to perform its obligations under the Contract, including, but not limited to, the issuance to Plaintiff Jay B. Ross of 1.8 million shares of Defendant Celtron International, Inc. stock after the purported restriction period ended in November 2004.

200. Plaintiff Jay B. Ross has suffered damages as a direct result of intentional and malicious interference with the Contract by Defendants Allen Harrington, Amanda Harrington, Marius Jordaan, Ron Pienaar, Kenneth Eade, Cordovano and Honeck, P.C., Rogelio Castro, ABC Corporations 1-100, and Zirk Engelbrecht.

## COUNT XIV

### FRAUDULENT CONVEYANCE

201. Plaintiffs repeat and incorporate the facts alleged in the preceding paragraphs.

202. Before Plaintiffs filed the Complaint in this action, Defendants Allen Harrington and Amanda Harrington owned substantial amounts of stock in Defendant Celtron International, Inc.

203. After Plaintiffs filed the Complaint in this action, Defendants Allen Harrington and Amanda Harrington began rapidly selling their stock in Defendant Celtron International, Inc. to the Alanda Family Trust, a trust controlled by them.

204. After Plaintiffs filed the Complaint in this action, Defendants Allen Harrington and Amanda Harrington sold all of their shares in Defendant Celtron International, Inc. as a result of a merger with Defendant Satellite Security Systems, Inc. on January 5, 2006.

205. Defendants Allen Harrington and Amanda Harrington were aware of the Complaint when they made the above stock transactions.

206. As a result of these transactions, Defendants Allen Harrington and Amanda Harrington have put their assets out of the reach of Plaintiffs as prospective judgment creditors.

207. Defendants Allen Harrington and Amanda Harrington, having had full knowledge of this lawsuit at the time of these stock transactions, transferred their stock with the intent to defraud, delay, and/or hinder Plaintiffs as prospective judgment creditors.

208. These actions by Defendants Allen Harrington and Amanda Harrington violated the Uniform Fraudulent Transfer Act, N.J.S.A. 25:2-20, et seq.

209. Plaintiffs will be damaged by this unlawful conduct upon securing judgment in this action.

**WHEREFORE**, Plaintiffs demand judgment against Defendants awarding Plaintiffs compensatory damages, punitive damages, attorneys' fees and costs of suit, pre- and post-judgment interest, equitable relief voiding the fraudulent conveyances, and such other and further relief as the Court deems just and proper in law or equity.

**PAUL CASTRONOVO, LLC**

Dated: March 10, 2006            By: /s/ Paul Castronovo
                                 Paul Castronovo
                                 Attorneys for Plaintiffs

**DEMAND FOR TRIAL BY JURY**

Plaintiffs demand a trial by jury on all issues so triable.

**PAUL CASTRONOVO, LLC**

Dated: March 10, 2006            By: /s/ Paul Castronovo
                                 Paul Castronovo
                                 Attorneys for Plaintiffs

## <u>DESIGNATION OF TRIAL COUNSEL</u>

Plaintiffs designate Paul Castronovo as trial counsel in this action.

**PAUL CASTRONOVO, LLC**

Dated: March 10, 2006                    By: /s/ Paul Castronovo
                                                        Paul Castronovo
                                                        Attorneys for Plaintiffs